# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | |
|---|---|
| **CLEMMIE LEE SPENCER,** | ) |
| | ) |
| **Petitioner,** | ) |
| | ) |
| **v.** | )          **7:25-cv-8003-EGL** |
| | ) |
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Respondent.** | ) |

## MEMORANDUM OPINION

Clemmie Lee Spencer pleaded guilty to possession with intent to distribute 28 grams or more of cocaine, possession of a firearm in furtherance of drug trafficking, and possession of a firearm by a convicted felon. *United States v. Spencer*, No. 22-12948, 2023 WL 7016213, at *1 (11th Cir. Oct. 25, 2023). He appealed his convictions, and the Eleventh Circuit affirmed. *Id.* at *4. Now Spencer moves to vacate his sentence under 28 U.S.C. § 2255, claiming he received ineffective assistance of counsel. Doc. 1. For the reasons below, his motion is denied.

## BACKGROUND

On August 13, 2019, police obtained a warrant to arrest Spencer at Quinise Watkins's house. *See* Doc. 2 at 2; Doc. 4 at 2; CR. Doc. 26-13.[1] On August 15, police found Spencer in the home and arrested him. CR. Doc. 28 at 2-3. The officers conducted a protective sweep of the home and in the process found crack cocaine, marijuana, and guns. *Id.* at 3-4.

Later the same day, a law enforcement officer sought a warrant to search Watkins's house, *id.* at 4, returning to the same magistrate who issued the arrest warrant two days before, *see* Doc. 4 at 11. The application and affidavit for the second warrant explained that the "affiant participated in the arrest of Clemmie Spencer for Unlawful Possession with Intent to Distribute Cocaine," that the "affiant obtained a search warrant for Clemmie Spencer's person," and that while executing the warrant, officers saw crack cocaine. CR. Doc. 26-14 at 2. The application and affidavit closed with a request that the magistrate issue a warrant "to search the aforesaid property for this person," *id.*, wording identical to the application and affidavit for the warrant to arrest Spencer, which the same officer filed just two days before, CR. Doc. 26-13 at 3.

---

[1] "Doc." citations refer to docket entries in Spencer's civil case, 25-cv-8003; "CR. Doc." citations refer to docket entries in Spencer's criminal case, 20-cr-34.

The second warrant issued by the magistrate, however, authorized law enforcement to search for and seize "evidence of illegal narcotic distribution." CR. Doc. 26-14 at 3. When police executed the second warrant, they found more crack cocaine, marijuana, and another gun. CR. Doc. 28 at 4-5; Doc. 4 at 2.

Spencer moved to suppress evidence found during the protective sweep and derivative evidence. CR. Doc. 28 at 5, 9. A magistrate judge recommend denying the motion to suppress because "there [wa]s no evidence of a connection between the residence and Spencer to support his standing to contest the protective sweep," *id.* at 6, and, in the alternative, because the protective sweep was lawful, as "the evidence was in plain view during a valid protective sweep," *id.* at 9. The district court adopted the report and recommendation. CR. Doc. 36.

In district court, Spencer did not challenge the validity of the second warrant. *See* CR. Doc. 45 at 13 (trial counsel explaining he was not challenging it other than his inability to verify signatures). He did challenge the second warrant in the Eleventh Circuit, but the court found that Spencer had invited any purported error and waived his argument. *Spencer*, 2023 WL 7016213, at *3-4.

Spencer moves to vacate, set aside, or correct his sentence. Doc. 1. He argues that he received ineffective assistance of counsel because his trial attorney did not argue that the magistrate failed to act in a neutral and detached manner by correcting the second warrant. *Id.* at 4.

## STANDARD

Under 28 U.S.C. § 2255, federal prisoners may file a motion to vacate, set aside, or correct a sentence that violates the constitution or federal law. "A § 2255 motion … must specify all the grounds of relief and state facts that support each ground." *Castillo v. United States*, No. 2:23-CV-8031, 2025 WL 3017424, at *2 (N.D. Ala. Oct. 28, 2025). If the prisoner "alleges facts that, if true, would entitle him to relief," the court must hold an evidentiary hearing. *Aron v. United States*, 291 F.3d 708, 715 (11th Cir. 2002).

The Sixth Amendment guarantees effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). An ineffective-assistance claim requires showing that counsel's performance was deficient and that the defendant suffered prejudice. *See id.* at 687. For deficient performance, the defendant must show his "representation fell below an objective standard of reasonableness." *Harrington v. Richter*, 562 U.S. 86, 104 (2011). There is a "strong presumption" that counsel performed reasonably. *Id.* For prejudice, the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "sufficient to undermine confidence in the outcome," not a preponderance, *id.* at 693-94, but the difference "rare[ly]" matters, *id.* at 697.

4

**DISCUSSION**

Spencer argues his trial counsel rendered ineffective assistance by not challenging the second warrant as violating the Fourth Amendment. *See* Doc. 2. Under the Fourth Amendment, "a warrant must be reviewed by a neutral and detached magistrate before it can be executed." *United States v. Brito-Arroyo*, No. 20-10974, 2021 WL 3661200, at *4 (11th Cir. Aug. 18, 2021) (internal quotation marks omitted). According to Spencer, the magistrate who issued the second warrant violated this requirement by authorizing police to seize evidence of drug trafficking despite the application and affidavit seeking a warrant to seize only Spencer. *See* Doc. 2 at 3-4. Spencer contends that his right to effective assistance of counsel was violated when his counsel failed to raise this "clearly" meritorious claim. *Id.* at 12-13.

Spencer cannot satisfy either prong of *Strickland*. In his challenge to the protective sweep, trial counsel reasonably attempted to suppress evidence from the protective sweep and the subsequent search in a single blow, rather than taking the piecemeal approach Spencer now argues that the constitution requires. Trial counsel's approach, to be sure, did not produce for Spencer, but that is not the question. Nor is the question whether counsel could have done more. *See Engle v. Isaac*, 456 U.S. 107, 134 (1982) (right to effective assistance "does not insure that defense counsel will recognize and raise every conceivable constitutional claim").

Instead, the questions are whether every reasonable attorney would have raised Spencer's neutral-and-detached argument, and, if so, whether there is a reasonable probability it would have resulted in a better outcome for Spencer. *See Chandler v. United States*, 218 F.3d 1305, 1313, 1315 (11th Cir. 2000). For two reasons, the answer to each question is no.

**1.** The first reason Spencer is not entitled to relief is standing. "To have Fourth Amendment standing to challenge a search, a person must have a reasonable expectation of privacy in the place searched." *United States v. Cohen*, 38 F.4th 1364, 1368 (11th Cir. 2022). "The text of the [Fourth] Amendment suggests that its protections extend only to people in 'their' houses." *Minnesota v. Carter*, 525 U.S. 83, 89 (1998). A person "who owns and possesses a house[] almost always has a reasonable expectation of privacy in it." *Byrd v. United States*, 584 U.S. 395, 404 (2018). The Supreme Court nonetheless has held that "in some circumstances a person may have a legitimate expectation of privacy in the house of someone else." *Carter*, 525 U.S. at 89. In particular, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Id.* at 90.

When Spencer challenged the protective sweep, the magistrate judge found "no evidence of a connection between the residence and Spencer to support his standing." CR. Doc. 28 at 6. Spencer and Watkins had a child together, but Watkins

testified at the suppression hearing that Spencer "had no legal connection" to the residence, CR. Doc. 45 at 74, that he was "not a residen[t]," *id.* at 69, and that Spencer "never stayed there," *id.* at 82. Spencer might have stayed "a night or so" in "prior months," *id.*, but he "was just over that day," *id.* at 72. Though the magistrate judge did "not find Watkins' testimony particularly credible," he found that the evidence did not support Spencer being "anything more than a temporary visitor." CR. Doc. 28 at 6-7 & n.14. Spencer does not argue that the magistrate judge incorrectly applied the law to these facts.

Instead, Spencer argues that other evidence does show that he lived with Watkins and he thus had a reasonable expectation of privacy in her home. *See, e.g.*, Doc. 7 at 5-8. This Court, however, is not redeciding Spencer's standing *de novo*, but assessing the issue "from the perspective of defense counsel based on facts 'as they were known to counsel *at the time of the representation.*'" *Hallford v. Culliver*, 379 F. Supp. 2d 1232, 1259 (M.D. Ala. 2004) (quoting *United States v. Teague*, 953 F.2d 1525, 1535 (11th Cir.1992)).

Under this standard, counsel did not render ineffective assistance. First, Spencer points to a "very recent" affidavit in which Watkins recants her suppression-hearing testimony. Doc. 7 at 9. This evidence was not available for the August 2020 hearing and thus is not relevant. *See Teague*, 953 F. 2d at 1535; *Horsley v. Alabama*, 45 F.3d 1486, 1495 (11th Cir. 1995) (no prejudice when evidence not reasonably

7

available at trial). Second, Spencer points to notes from an interview of Watkins, describing her as saying that "Spencer had been staying at the residence [for] about a week." Doc. 7 at 8. Even Spencer quibbles with this account, saying that he had been living there for at least two weeks, *id.*, but the notion that this evidence would have trumped Watkins's more specific, live testimony to the contrary and altered the magistrate judge's findings is completely speculative. Third, Spencer highlights the warrant application, which lends some support to his standing because it states that a database listed Spencer as living at Watkins's address and that officers often saw him there, Doc. 7 at 6-7, but Watkins testified at the suppression hearing that she shared a child with Spencer and that he recently used her address for bills because he was moving, CR. Doc. 45 at 75, 78. All this helps explain the facts described in the application, facts the magistrate judge had before it in any event, as the application was admitted at the hearing. CR. Docs. 26-13 & 14; *see Dallas v. Warden*, 964 F.3d 1285, 1310 (11th Cir. 2020) (failure to admit cumulative evidence is not prejudicial).

In short, a magistrate judge already found Spencer lacked a reasonable expectation of privacy in Watkins's home, and the best he can do now is point to evidence challenging Watkins's credibility. Yet none of this evidence is so powerful as to raise above the speculative level the likelihood that the magistrate judge would have found that Spencer lived with Watkins, the only basis he asserts for standing.

Even with Spencer's new evidence, the magistrate judge easily could have found that he fell short of his burden. *See Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978) (defendant's burden). As a result, Spencer has not demonstrated ineffective assistance. *See Denson v. United States*, 804 F.3d 1339, 1342 (11th Cir. 2015) (failure to raise meritless claim is not ineffective); *United States v. Edwards*, 142 F.4th 1270, 1284 (11th Cir. 2025) ("[A] mere possibility isn't a reasonable probability.").

**2.** The second reason Spencer is not entitled to relief is that his Fourth Amendment claim is weak on the merits. Under the Fourth Amendment, a warrant must be reviewed by a neutral and detached magistrate who "read[s] the warrant and make[s] his own independent assessment as to whether the warrant and its underlying affidavit contain a sufficient amount of information to support a finding of probable cause." *United States v. Martin*, 297 F.3d 1308, 1317 (11th Cir. 2002).

The basic point of the neutral-and-detached requirement is that independent judgment is a "more reliable safeguard" than the "hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *United States v. Leon*, 468 U.S. 897, 913-14 (1984). Law enforcement officers cannot make that judgment themselves, nor can those with "connection[s]" to law enforcement that pose a risk of "distort[ing]" their judgment. *Shadwick v. City of Tampa*, 407 U.S. 345, 350 (1972). When a magistrate issues a warrant, it must be

9

because he drew "the usual inferences which reasonable men draw from evidence," *Johnson v. United States*, 333 U.S. 10, 14 (1948), not because he served "merely as a rubber stamp for the police," *Leon*, 468 U.S. at 914; *accord Martin*, 297 F.3d at 1316.

The Supreme Court has not been crystal clear about the level of independence required, but it has found independence lacking in some cases. *See Martin*, 297 F.3d at 1316. The Court has found a lack of independence when confronted by warrants issued by a state attorney general "who was actively in charge of the investigation and later was to be chief prosecutor at trial," *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971); a justice of the peace whose compensation "was directly dependent on how many warrants he issued," *Connally v. Georgia*, 429 U.S. 245, 246-50 (1977); and a judge who "bec[a]me a member, if not the leader, of the search party which was essentially a police operation," *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 327 (1979).

Those cases are quite different from what happened here. Rather than raising red flags about whether she seriously considered the evidence in the warrant, the magistrate changing the affidavit to permit seizure of certain items is entirely consistent with the magistrate using her own judgment. The application and affidavit explained that the affiant arrested Spencer for drug trafficking. It would have made no sense for law enforcement to ask to search the house again to arrest him again, as

10

the application requested. The magistrate therefore easily could have suspected that the portion of the application listing the things to be seized was drafted in error, especially given that the wording was identical to the application for warrant the magistrate issued just two days earlier, and from there simply instead filled out what, in her own judgment, the officers had probable cause to seize. These facts are so far off from any binding case Spencer has cited or this Court has found that counsel cannot be considered deficient for failing to hope the courts would drastically expand the doctrine in Spencer's favor. *See Mills v. Comm'r, Alabama Dep't of Corr.*, No. 21-11534, 2021 WL 5107477, at *7 (11th Cir. Aug. 12, 2021); *Broomfield v. United States*, No. 3:18-CV-1525, 2020 WL 4582725, at *5 (M.D. Fla. Aug. 10, 2020).

Caselaw from the circuit courts confirms that a competent attorney could reasonably pass on Spencer's novel argument. In *Albitez v. Beto*, the old Fifth Circuit explained that a magistrate assisting with preparing an affidavit "does not detract from his neutrality," as he need not "remain mute, and simply accept or reject an affidavit." 465 F.2d 954, 956 (5th Cir. 1972). The Sixth Circuit later agreed. *See United States v. King*, 951 F.2d 350 (6th Cir. 1991). So did the Fourth Circuit. *See United States v. Servance*, 394 F.3d 222, 232 (4th Cir. 2005) (vacated on other grounds). And the Tenth Circuit has explained that "alteration of the search warrant does not call into question … neutrality or detachment." *United States v. Ramirez*,

11

63 F.3d 937, 941 (10th Cir. 1995). Though changes to an affidavit require a "more careful analysis," the court reasoned, it approved "common sense extensions." *Id.*

Spencer has not identified a single case in which a court found a magistrate violated the Fourth Amendment by making changes like those at issue here. Perhaps some reasonable attorneys would raise this argument, but it is simply not the case that every one of them would push for an extension of this doctrine to include the facts here.

Indeed, had Spencer raised the argument before this Court, it would have rejected it on the merits. *See Denson*, 804 F.3d at 1342. The facts do not indicate that the magistrate acted as a rubber stamp. Far from it. She clearly considered the evidence in the application and affidavit and followed the logic: that the officers who arrested Spencer for drug trafficking and found evidence in the home of drug trafficking during a protective sweep had probable cause to search the house for more evidence of drug trafficking. Paying close attention to the facts in the application and affidavit—rather than acting as a rubber stamp—is how she realized that the application contained a mistake and knew how to fix it. Spencer hardly even challenges her logic, instead arguing that she "took on the role of a police officer in determining the scope of the search." Doc. 2 at 10. But if Spencer cannot claim that her conclusion is unsupported by logic—which she apparently reached on her own— then the Court cannot conclude that she reached it through indifference or partiality.

12

Unlike executing a warrant or prosecuting defendants, drawing "the usual inferences … from evidence," *Johnson*, 333 U.S. at 14, is a judicial function, not a law enforcement operation. This is far from "wholly abanon[ing]" the "judicial role." *Leon*, 468 U.S. at 923.

Finally, it would make little sense for Spencer's counsel to press an argument that could lead to suppression of only the contents of the second search, when the earlier protective sweep had already uncovered guns, marijuana, and crack cocaine. Spencer's new argument would keep out only some of the evidence of guns and drugs found at the home; his counsel made a reasonable choice to focus on an argument that could suppress all of that evidence. "Good advocacy requires weeding out some arguments to stress others; therefore, counsel is not deficient for choosing some lines of defense over others." *Roy v. United States*, No. 2:19-14102-CV, 2021 WL 2269825, at *13 (S.D. Fla. Mar. 2, 2021) (citing *Dell v. United States*, 710 F.3d 1267, 1281 (11th Cir. 2013)), *report and recommendation adopted*, 2021 WL 1975206 (S.D. Fla. May 17, 2021).

## CONCLUSION

The Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.

The Motion Requesting Final Decision (Doc. 8) is **DENIED** as moot. Judgment will

be entered by separate order.

The Clerk of Court is **DIRECTED** to mail a copy of this order to Spencer at

his address of record.

**DONE** and **ORDERED** this 21st day of April, 2026.

**EDMUND G. LACOUR JR.**
UNITED STATES DISTRICT JUDGE

14